1
2
3

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

4   JENNIFER BARTELL,                              Case No. 2:22-cv-01220-EJY

5              Plaintiff,

6        v.                                        **ORDER**

7   KILOLO KIJAKAZI, Acting Commissioner of
    Social Security,
8
               Defendant.
9

10       Plaintiff Jennifer Rose Bartell ("Plaintiff") seeks judicial review of the final decision of the

11  Commissioner of the Social Security Administration ("Commissioner") denying her application for

12  disability insurance ("DIB") under Title II of the Social Security Act (the "Act").  ECF No. 18.  On

13  December 19, 2022, the Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's

14  Motion for Reversal and Remand.  ECF Nos. 20, 21.  On January 9, 2023, Plaintiff filed her Reply.

15  ECF No. 22.  For the reasons stated below, the Commissioner's decision is affirmed.

16                          **I.      BACKGROUND**

17       Plaintiff filed an application for disability insurance benefits on October 31, 2018 alleging

18  disability beginning on July 15, 2018.  Administrative Record ("AR") 414.[1]  The Social Security

19  Administration denied Plaintiff's claim initially and upon reconsideration (AR 309, 317-324),

20  followed by Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ").  AR 327-

21  28.  The ALJ held a hearing on February 23, 2021.  AR 202.  On April 6, 2021, the ALJ issued a

22  decision finding Plaintiff not disabled.  AR 180-195.  Plaintiff requested review of the ALJ's

23  decision (AR 411-413), which was denied by the Appeals Council on June 15, 2022.  AR 1-4.

24  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

25
26
27
28

---

[1]      Plaintiff concurrently filed an application for supplemental Social Security income on December 6, 2018.  AR
418-424.

## II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla."  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, --U.S.--, 139 S.Ct. 1148, 1154 (2019)).  In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  And, a court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

### A.    <u>Establishing Disability Under the Act</u>.

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1.  the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2.  the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id.*

**B.**      **Summary of ALJ Findings**.

At step one, the ALJ found Plaintiff meets the insured status required by the Act through December 31, 2023 and has not engaged in substantial gainful activity since July 15, 2018, the alleged disability onset date.  AR 185.  At step two, the ALJ found Plaintiff had severe impairments of fibromyalgia and degenerative disc disease of cervical and lumbar spine, status-post cervical fusion on December 26, 2017 at C5-C7.  AR 186.  At step three, the ALJ found none of Plaintiff's severe impairments, considered singly or in combination, met or medically equaled the criteria of any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  AR 188-189.

In preparation for step four, the ALJ determined "[a]fter careful consideration of the entire record, … [that Plaintiff] has the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to occasional reaching overhead bilaterally; frequent reaching in all other directions bilaterally; frequent handling and fingering bilaterally; frequent climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; the claimant can never work at unprotected heights; never work with moving mechanical parts; avoiding concentrated exposure extreme cold, and extreme heat; and never working in the presence of to dust, odors, fumes and pulmonary irritants."  AR 189.

At step four, the ALJ concluded Plaintiff is capable of performing past relevant work as a customer service representative.  AR 193.  The ALJ stated "[t]his work does not require the performance of work-related activities precluded by" Plaintiff's RFC.  *Id*.  The ALJ based this determination on the entirety of the record, including Plaintiff's work history, income records, and the testimony of the Vocational Expert (the "VE"), who compared the requirements of Plaintiff's prior job as a customer service representative to the ALJ's determined restrictions and found Plaintiff was capable of performing the job in both actual and general performance.  AR 193-194.  In addition, as an alternative to step five, the ALJ determined there were other jobs in the national economy which Plaintiff would be able to perform, resulting in a finding that Plaintiff was not disabled.  20 C.F.R. pt. 404, subpt. P, app. 2.  AR 194-195.  Because the ALJ concluded Plaintiff could perform her past relevant work as a customer service representative, the ALJ determined Plaintiff was not

under a disability, as defined by the Act, from July 15, 2018 through the date of the ALJ's decision. AR 195.

**C.    Plaintiff's Claims**.

    1.    Plaintiff Argues the ALJ's RFC Assessment is not Supported by Substantial Evidence.

Plaintiff alleges the ALJ's RFC assessment is not supported by substantial evidence. ECF No. 18 at 5-7. Plaintiff complains the ALJ's determination that she can engage in a range of sedentary work on a full-time, consistent basis is not supported by the record. *Id.* at 6. Specifically, Plaintiff points to the ALJ's findings regarding Plaintiff's fibromyalgia and how the ALJ did not apply the proper analysis of the condition for purposes of formulating Plaintiff's RFC. *Id.* at 6-7. Plaintiff argues the ALJ disregarded evidence in the record of Plaintiff's multiple tender points, chronic pain, fatigue, and memory fog (all symptoms of fibromyalgia) and contends this approach is contrary to the Commissioner's own rules for analyzing fibromyalgia, citing Social Security Ruling 12-2p. *Id.* at 6. Plaintiff also contends the ALJ's finding that Dr. Amanda Bartlett's opinion was unpersuasive because the opinion was inconsistent with the doctor's objective findings as well as the medical opinions of State Agency medical consultants. *Id.* at 6-7. Asserting fibromyalgia is a disease that eludes objective findings, Plaintiff says an ALJ's conclusion must be based solely on a patient's reports of pain and other symptoms. For this reason, Plaintiff says the ALJ should have found Dr. Bartlett's opinions persuasive. *Id.*

    2.    Plaintiff Contends the ALJ did not Articulate Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints.

Plaintiff summarizes the burden shifting that occurs as a claimant gives testimony regarding an underlying impairment, stating: "[Plaintiff] has the burden of proving that … [her] combination of impairments would result in some degree of limitation in her activity … Once … [Plaintiff] demonstrated the existence of a condition that would cause some degree of pain and dysfunction, the burden shifted to the Commissioner through the ALJ to articulate reasons for rejecting the pain and limitation testimony … Furthermore, when no evidence of malingering exists in the record, the

1    ALJ must articulate clear and convincing reasons for rejecting the pain and limitation testimony."

2    *Id.* at 8.

3         Plaintiff reminds the Court of the ALJ's responsibility when analyzing a claimant's

4    testimony to consider a multitude of factors (the claimant's reputation for truthfulness,

5    inconsistencies between the claimant's testimony and documented conduct, the claimant's daily

6    activities, the claimant's work record, and evidence from third parties regarding the claimant's

7    asserted symptoms) and to consider Plaintiff's testimony in light of the record as a whole. *Id.* at 9.

8    Plaintiff argues the ALJ did not, as she was required to do, explain which testimony the ALJ found

9    to not be credible nor identify which evidence undermined Plaintiff's testimony. *Id.* Plaintiff also

10   asserts the ALJ's discounting of Plaintiff's complaints due to her use of conservative medical care

11   is improper because Plaintiff's conditions—degenerative disc disease of cervical and lumbar spine,

12   status-post cervical fusion, and fibromyalgia—do not have other, more aggressive forms of treatment

13   available. *Id.* at 10 *citing* AR 191.

14        Plaintiff next takes issue with the ALJ's reliance on Plaintiff's activities of daily living

15   ("ADLs") when discounting Plaintiff's complaints arguing the ALJ erred by not providing a nexus

16   between being able to perform these activities and the demands of full-time employment. *Id.* at 10-

17   11 *citing* AR 192. Plaintiff reiterates her insistence that the ALJ erred when using diverging opinions

18   of various doctors as grounds for rejecting Plaintiff's limitations testimony arguing that the ALJ

19   should have based her findings on reasons unrelated to Plaintiff's testimony (such as a reputation for

20   dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony

21   and the claimant's conduct. *Id.* at 11. Finally, Plaintiff restates her criticism of the ALJ's finding

22   that there was no objective support to bolster Plaintiff's testimony contending that even in the

23   absence of objective support for a fibromyalgia finding (which Plaintiff does not concede), a

24   fibromyalgia analysis should be conducted primarily through subjective complaints not objective

25   data. *Id.* at 12-13 *citing* AR 190-191.

26

27

28

**D.     The Commissioner's Response**.

      1.     The Commissioner Argues Substantial Evidence Supports the ALJ's RFC Finding.

The Commissioner states that when crafting the RFC, the ALJ "reasonably assessed Plaintiff's symptom allegations, finding them inconsistent with generally normal examination findings, improvement with treatment, Plaintiff's daily activities, and the prior administrative medical finding and medical opinion evidence." ECF No. 20 at 3-4 *citing* AR 189.  The ALJ then translated her findings into an RFC concluding Plaintiff is able to perform sedentary work with numerous postural and environmental restrictions.  *Id.*  The Commissioner reminds the Court that the ALJ cannot grant disability benefits based solely on a claimant's subjective complaints.  *Id.* at 4 *citing* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a).   The Commissioner argues that a claimant's statements concerning his or her symptoms are to be evaluated for consistency with the objective medical evidence and the other evidence in the record.  *Id. citing* 20 C.F.R. § 404.1529(c)(2)–(3); SSR 16-3p.  In this case the Commissioner argues the ALJ's findings were supported by specific citations to the record and supported by substantial evidence.  *Id.* at 4-5.

First, the Commissioner recaps the ALJ's determination that Plaintiff's testimony was inconsistent with the objective medical evidence.  *Id.* at 5.  The Commissioner points to physical exams of Plaintiff in late 2018 conducted after the alleged disability onset date showing normal muscle strength in her upper and lower extremities, normal gait, no neurological defects, and normal balance all despite some nerve pinching in Plaintiff's upper and lower extremities.  *Id.* at 5-6 *citing* AR 190-91, 753-54, 768-69, 774, 786-87, 798, 802, 924, 1807, 1810, 1813, 3416, 3418.  The ALJ noted similar medical observations of Plaintiff in 2019, as Plaintiff had normal range of motion in her shoulders, intact power in her upper and lower extremities, unremarkable coordination, and normal gait despite tenderness and pain in her spine and lower extremities.  *Id.* at 6 *citing* AR 191, 720, 3214, 3217, 3416, 3421.  The Commissioner points to the ALJ's reference to doctor's office visits in June 2019 and July 2019 when Plaintiff had full range of her upper and lower extremities, was able to make sudden movements without sign of pain or aggravation, was able to bend without difficulty, and showed no neuroforaminal narrowing or spinal canal stenosis.  *Id. citing* AR 191, 1197, 3214-15, 3218, 3220.  The ALJ also noted a lack of treatment or hospital records during the

year 2020, which the ALJ interpreted to mean Plaintiff's physical impairments were not as disabling as Plaintiff alleged. *Id. citing* AR 191.

The Commissioner disputes Plaintiff's contention that an ALJ may not use objective medical evidence when evaluating a claimant's assertion that he or she suffers from fibromyalgia. *Id.* at 7. The Commissioner argues that objective evidence is needed to establish the presence of a medically determinable impairment, which is followed by the ALJ's findings regarding the intensity and persistence of Plaintiff's symptoms and the resulting impact on the claimant's capacity for work. *Id.* at 7-8 *citing* SSR 12-2p. The Commissioner avers the ALJ relied on objective medical evidence as well as on Plaintiff's treatment history, daily activities, and the prior administrative medical findings in arriving at her conclusion to discount Plaintiff's subjective allegations. *Id.* at 8.

The ALJ noted Plaintiff's December 2017 spinal surgery and the subsequent decrease of pain in her neck. *Id. citing* AR 190, 1898. In addition, the ALJ cited Plaintiff's use of Voltaren gel, ice packs, and homeopathic methods to treat her arthritis, pain, and fibromyalgia. *Id.* at 9 *citing* AR 191, 751, 225, 1813. Plaintiff did not use any prescription medication for her fibromyalgia, assistive devices for ambulation (despite complaints of falling), or undergo any additional surgery. *Id. citing* AR 3221-22, 231. The Commissioner states these examples of conservative treatment, coupled with the evidence Plaintiff's physical health improved in 2018, 2019, and 2020, demonstrate her physical impairments were not as severe as Plaintiff suggests. *Id.* The Commissioner alleges as erroneous the assertion that an ALJ can rely on a plaintiff's use of conservative treatment to reject subjective testimony only if the evidence shows more aggressive treatment was available and the plaintiff refused that treatment. *Id.* The Commissioner argues Plaintiff's positive response to conservative treatment demonstrates proper reliance on use of conservative care in direct contrast to Plaintiff's complaints of severe pain. *Id.* at 10. Further, the Commissioner argues that even if she is correct, the Commissioner points to Plaintiff's declination of a referral to a rheumatologist, who could have more effectively managed Plaintiff's fibromyalgia, and Plaintiff's failure to follow through with that referral. *Id. citing* AR 3221.

The Commissioner argues the ALJ also properly relied on Plaintiff's participation in everyday activities when finding Plaintiff's testimony was inconsistent with the record. *Id.* The

ALJ stated Plaintiff was able to feed and transport her son to school four days a week, take care of and walk a dog, cook meals, go shopping, attend religious services, and perform household chores such as laundry, washing dishes, and other cleaning activities. *Id. citing* AR 192. The Commissioner contends these facts support the ALJ's finding that Plaintiff's documented activities contradicted her claim of disabling limitations. *Id.* at 11.

The Commissioner cites the ALJ's findings that the administrative medical findings of State Agency Drs. Rebeca Hamilton and Samuel Pak, together with the medical opinion of Dr. James Marx, were persuasive. *Id. citing* AR 192-93. These findings contrast with the ALJ's determination that the medical opinion of Dr. Bartlett was unpersuasive, which the Commissioner argues was made reasonably. *Id.* at 11-12 *citing* AR 193. The Commissioner contends the ALJ's use of prior administrative and medical opinions is proper when rejecting a claimant's subjective allegations of disability. *Id*. at 12.

Regarding the medical opinion of Dr. Bartlett, the Commissioner reminds the Court that the new Social Security regulations implemented in January 2017 dispense with the "treating source rule," which gave deference to medical opinions rendered by treating sources. *Id.* at 13. The new regulations emphasize consistency with other evidence in the record and supportability of the medical opinion. *Id.* at 14. A decision by an ALJ to discredit a medical opinion must simply be supported by substantial evidence. *Id.*

In this case, the ALJ's analysis of Dr. Bartlett's opinion emanated from a form entitled "Fibromyalgia Medical Source Statement" in which Dr. Bartlett concluded Plaintiff had marked limitations of activities of daily living, in maintaining social functioning, and in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.* at 15 *citing* AR 188, 3208-09. Dr. Bartlett also found Plaintiff would need a sit and stand/or walk option, need to walk around for five minutes in an eight hour day and walk for two minutes each time, need unscheduled breaks every hour with the breaks varying in length, be unable to use her hands bilaterally to grasp, turn, and twist objects, need to be off task 25 percent of the day, is incapable of even low stress work, and would miss more than four days of work per month. *Id. citing* AR 193, 3207-08.

The ALJ found these conclusions inconsistent with Dr. Bartlett's observations, in which she found Plaintiff to have normal gait and extremities with no neurological defects. *Id. citing* AR 193, 1813.  In addition, the ALJ discussed Drs. Hamilton and Pak's finding and their conclusion that Plaintiff could perform sedentary work based on her normal upper and lower motor strength, normal gait, no neurological deficits, and normal balance. *Id. citing* AR 193, 753-54, 768-69, 786-87, 798, 802, 924.  The Commissioner argues the ALJ adequately explained why she found Dr. Bartlett's opinion unpersuasive and even where the record contains conflicting medical evidence, a reviewing Court must defer to the ALJ's interpretation. *Id.* at 17.

**E.** **Analysis**

1. The ALJ's RFC is Supported by Substantial Record Evidence.

An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478.  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC.  20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679.  Consequently, the issue before the Court is not whether the ALJ could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

Here, the ALJ summarized Plaintiff's alleged limitations arising from disorders of the skeletal spine, lumbar spinal stenosis, and fibromyalgia. AR 188-190.  The ALJ recapped Plaintiff's complaints of the impact that these alleged severe impairments have on her life.  AR 190 *citing* AR

437-447.[2]  The ALJ noted the assortment of difficulties Plaintiff asserted she lives with as a result of her impairments, including pain in her back and legs, aching in the tendons in her arm, trouble reaching overhead, pain and body aches when walking, pain when pushing the gas pedal, anxiety, constant fatigue, fear of going outside, lack of sleep, cold spells, shortness of breath, dizzy spells, brain fog, no feeling in her hands, inability to walk far, and inability to carry more than five pounds. *Id.*  The ALJ also noted Plaintiff only takes over-the-counter medication to treat her symptoms and does not use any assistive device to ambulate.  *Id.*  The ALJ recited Plaintiff's description of her daily activities, including caring for her eleven-year-old son five days a week, driving him to school four days a week, grocery shopping, and preparing meals while her son helps with most of the household chores.  *Id.*  The ALJ noted Plaintiff can manage her own personal care, but will grab onto things to prevent falling, which has happened to her in the past.  *Id.*

The ALJ stated, after considering all the evidence, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical and other evidence in the record.  *Id.*  In discussing Plaintiff's fibromyalgia impairment, the ALJ discussed the cervical surgery Plaintiff underwent in December 2017 following a July 2017 car crash.  *Id. citing* AR 1898.  The ALJ described imaging of the cervical spine in January 2018 corroborating the post-surgery finding that Plaintiff's spinal alignment was well maintained at C5-C7, and Plaintiff's spine showed no evidence of loosening, migration, or failure.  *Id. citing* AR 864. The ALJ cited Plaintiff's statements during a May 2018 visit to Dr. Bartlett that much of Plaintiff's fibromyalgia-related symptoms in her neck were resolved.  *Id. citing* AR 1813.

The ALJ acknowledged several physical examinations in 2018 and 2019 demonstrating tightness and tenderness in and around Plaintiff's spinal region, along with limits in range of motion, pain, tingling, and numbness in various parts of the body connected with spinal health.  *Id.* at 190-91 citing AR 753-54, 768-39, 786-87, 798, 924.  The ALJ noted, however, that despite these health issues, Plaintiff displayed normal upper and lower motor strength, normal gait, no neurological deficits, and normal balance.  *Id. citing id.*  In addition, despite physical exams in May 2019

---

[2]     Plaintiff contended she was unable to work due to her cervical spine injury, fibromyalgia, mid back spine injury/pain, low back injury/pain, cervical spine stenosis, chronic fatigue, thoracic strain, pre-syncope, and radiculopathies.  *Id.*

revealing L3-L4 and L4-L5 left extraforaminal/left anterolateral disc bulges, facet arthrosis and ligamentum flavum redundancy, Plaintiff displayed no significant neuroforaminal narrowing or spinal canal stenosis.  AR 191 *citing* AR 2112.  The ALJ cited medical records from July 2019 in which Plaintiff was observed as being able to "jump in and out of her seat" and to "do twisting and bending motions" all with no problem.  *Id. citing* AR 3215.  The ALJ also referenced Plaintiff's use of conservative treatment such as Voltaren gel and other over-the-counter medication to treat her symptoms, as well as homeopathic methods to treat her fibromyalgia and the lack of a prescribed assistive device to ambulate.[3]  *Id. citing* AR 751, 1813, 3221, 467.  Moreover, the ALJ noted there are no additional back or neck surgeries Plaintiff incurred or that were recommended, nor were there any treatment or hospital records from the year 2020 regarding Plaintiff's severe physical limitations, supporting the conclusion that Plaintiff's impairments were not as debilitating as alleged.  *Id.*

To address Plaintiff's medical needs arising from her post cervical surgery, neck and back pain, fibromyalgia flares, and upper and lower extremity radiculopathy, the ALJ stated the following:

> [T]he residual functional capacity limits the claimant to sedentary work occasionally reaching overhead to the left, and occasionally reaching overhead to the right; for all other reaching she can reach frequently to the left, and can reach frequently to the right; she can handle items frequently with the left hand, and can handle items frequently with the right hand; she has fingering limitations frequently with the left hand, and has fingering limitations frequently with the right hand; she can climb ramps and stairs frequently; never climb ladders, ropes, or scaffolds; balance occasionally; stoop  occasionally; kneel occasionally, crouch occasionally; crawl occasionally; the claimant can never work at unprotected heights; never work with moving mechanical parts; and she should avoid concentrated exposure to dust, odors, fumes and pulmonary irritants, extreme cold, and extreme heat.

*Id.* at 191-192.

In support of her determination that Plaintiff's impairments are not disabling, the ALJ cited to Plaintiff's ADLs, which include picking her son up from school, feeding him, taking him to medical appointments, taking care of animals, not taking any medication for her fibromyalgia, preparing one-pot meals, doing laundry, washing dishes, cooking, shopping, and going to synagogue every Saturday.  AR 192 *citing* AR 461-468, 3421. The ALJ found persuasive the medical opinions of the State Agency medical consultants at the initial and reconsideration stages because they were

---

[3]      The Court notes the ALJ's finding of conservative treatment, while potentially susceptible to a different interpretation, does not allow for remand as the Court must "defer to the ALJ's conclusion."  *Batson*, 359 F.3d at 1198 (internal citation omitted).

supported by Plaintiff's medical history.  *Id. citing* AR 243-266, 269-287, 290-308.  Each of the State consultants found Plaintiff to be able to perform sedentary work with frequent postural limitations but never climbing ladders, ropes, or scaffolds, unlimited balancing, and occasional crawling; occasionally lifting overhead bilaterally; and avoiding concentrated exposure to extreme cold, extreme heat, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.  *Id.*

The ALJ noted the opinions of the State consultants are consistent with the findings of Dr. James Marx, who observed Plaintiff in July 2017, just after Plaintiff's involvement in a motor vehicle collision in which her cervical spine was sprained, and concluded Plaintiff could do no lifting over five pounds or bending and stooping until August 12, 2017.  AR 193 *citing* AR 1151.  In finding Dr. Bartlett's medical opinion unpersuasive, the ALJ found her conclusions inconsistent with the overall medical record and with Dr. Bartlett's observations that Plaintiff had normal gait and extremities with no neurological defects. *Id.*, *citing* AR 1813.

Plaintiff contends the ALJ erred in her formulation of Plaintiff's RFC (1) by failing to analyze Plaintiff's fibromyalgia under SSR 12-2p when determining Plaintiff's ability to perform sedentary work on a full-time, consistent basis, and (2) by improperly discounting the medical opinion of Dr. Bartlett.  ECF No. 18 at 6-7.

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'"  *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017), *quoting Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'"  *Id. quoting id.*, 379 F.3d at 590.  "What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal."  *Id.* (internal quotation marks and alteration omitted).  "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'"  *Id. quoting Benecke*, 379 F.3d at 590.  "[T]here are no laboratory tests to confirm the diagnosis."  *Id.* (alteration in original), *quoting id*.  That said, and while objective medical evidence "cannot establish the existence of fibromyalgia, the medical evidence is still relevant and can be used 'to demonstrate a lack of functional limitations during clinical

examination.'" *Sharma H. v. Kijakaji*, Case No. 5:21-cv-01630-GJS, 2023 WL 1971153, at *4 (C.D. Cal. Feb. 13, 2023) (citation omitted).  "A diagnosis of fibromyalgia is not a free disability card that renders all medical evidence irrelevant for all purposes."  *Melendez v. Astrue*, Case No. CV 10-01930-JEM, 2011 WL 6402287, at *6 (C.D. Cal. 2011).

SSR 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'"  *Revels*, 874 F.3d at 657 *quoting* SSR 12-2p.  The ruling "warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her [RFC] should consider 'a longitudinal record whenever possible.'"  *Id. quoting* SSR 12-2p.  "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and *Benecke*."  *Id.*

In this case, the ALJ found Plaintiff's fibromyalgia to be a severe medical impairment; however, not rising to the level of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 187-188.  While the ALJ did not expressly reference SSR 12-2p in her discussion of how Plaintiff's RFC was calculated, the ALJ did effectively take into account the unique nature of fibromyalgia when formulating an RFC tailored to Plaintiff's needs.  *Id.* at 189.  The ALJ did not err in her analysis of Plaintiff's fibromyalgia impairment as she properly construed the medical evidence in light of fibromyalgia's symptoms.  *See Revels*, 874 F.3d at 662.  Further, even if the ALJ failed to specifically address the diagnostic challenges that fibromyalgia presents, as the Ninth Circuit has instructed (*see id.*), such an error would be harmless.[4]

The ALJ discussed at length the history of Plaintiff's severe impairments, including her fibromyalgia condition.  The ALJ cited the onset of Plaintiff's symptoms from fibromyalgia as a car crash in July 2017, acknowledging the multitude of spinal-related symptoms that Plaintiff exhibited from the time of the crash through the year 2019.  AR 190-191.  The ALJ referenced medical records

---

[4]    The Ninth Circuit holds that the harmless error doctrine applies in the Social Security context.  *Stout*, 454 F.3d at 1054 *citing Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.").  A mistake made by an ALJ is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."  *Id.*  Similarly, error is construed to be harmless "if the agency's path may reasonably be discerned," even if the agency "explains its decisions with less than ideal clarity."  *Alaska Department of Environmental Conserv. v. EPA*, 540 U.S. 461 (2004).  Here, based on the wholesome nature of the ALJ's analysis of Plaintiff's fibromyalgia-related symptoms, any failure to specifically reference the SSR 12-2p analysis was harmless.

showing a pattern of Plaintiff's movement improving and treatment methods demonstrating the symptoms from Plaintiff's fibromyalgia were not unduly severe.  *Id.* at 191.  Despite noting Plaintiff's ability to perform various bodily movements and ADLs, the ALJ nevertheless formulated an RFC limiting Plaintiff to sedentary work with numerous activity and environmental restrictions. *Id.* at 189.

The ALJ's thorough analysis of Plaintiff's fibromyalgia-related symptoms, medical history, treatment methods, and ADLs, in conjunction with the highly tailored nature of the RFC, constitutes a longitudinal view of the medical record in this case.  In addition, while Plaintiff's fibromyalgia impairment is different from other more standard medical conditions in its diagnostic methods, a finding of fibromyalgia does not, as Plaintiff seems to suggest, entitle Plaintiff to an automatic finding of disability.  It is true that there is evidence in the record of Plaintiff suffering from tender points, pain, fatigue, and memory fog.  AR 547, 719, 752, 922, 1005, 1008, 3219, 3221.  But the ALJ considered Plaintiff's documented medical symptoms from fibromyalgia along with the other evidence in the record, determined that Plaintiff's impairments were not disabling, and came to a conclusion that was a rational interpretation of the evidence.  *Gamel v. Kijakazi*, Case No. 19-35916, 2022 WL 1499655, at *1 (9th Cir. May 12, 2022); *Manneh v. Colvin*, Case No. 2:15-cv-02200-PAL, 2019 WL 521608, at *7 (D. Nev. Feb. 11, 2019) (holding that an ALJ's RFC determination, factoring in the severity of a claimant's diagnosis of fibromyalgia, was supported by substantial evidence and was a rational interpretation of the evidence).

Controlling case law establishes that for cases filed on or after March 27, 2017, courts are not to consider medical opinions in a particular case according to any kind of absolute hierarchy. *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022).  Plaintiff's case was filed on October 31, 2018; therefore, the medical opinions offered must be viewed under current regulations requiring the ALJ to consider "supportability" and "consistency" as the main factors in determining persuasiveness of medical opinions and findings.  20 C.F.R. § 404.1520c(2).[5]  An ALJ may not find a medical opinion

---

[5]      "Supportability" is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

unpersuasive based only on "sheer disbelief" of the medical opinion. *Timpone v. Kijakazi*, Case No. 18-55155, 2022 WL 1599128, at *1 (9th Cir. May 20, 2022), *citing Benecke*, 379 F.3d at 594. Instead, an ALJ must provide a "specific and legitimate reason" to discount a treating physician's opinion. *Id.* (citation omitted).

Regarding Dr. Bartlett's findings, the ALJ concluded they were unpersuasive because the doctor's conclusions about Plaintiff's extreme limitations (AR 193 citing AR 3204-3209) were contradicted by Dr. Bartlett's findings that Plaintiff had normal extremities, no neurological deficits, and normal gait. *Id. citing id.* The ALJ also found Dr. Bartlett's conclusion to be inconsistent with the opinions of Drs. Hamilton and Pak, who concluded Plaintiff had normal gait, normal upper and lower motor strength, no neurological deficits, and normal balance. AR 192 *citing* AR 753-54, 768-69, 786-87, 798, 802, 924. In arriving at Plaintiff's RFC, the ALJ used her determination that Dr. Bartlett's findings of Plaintiff requiring extreme limitations conflicted with the other medical opinions in the medical record. AR 193. As mentioned, *supra*, the diagnostic challenges of fibromyalgia do not, on their own, entitle Plaintiff to a finding of disability. *Melendez*, 2011 WL 6402287, at *6. The Court finds the ALJ did not err by viewing Dr. Bartlett's opinion in an unpersuasive light and provided a specific and legitimate set of reasons for discounting her opinion as not adequately supported or consistent with the medical and other evidence in the record.

It is not the role of the Court to second guess the determination of the ALJ even if there is more than one such interpretation of the evidence that could have been made. *Id.* As the Ninth Circuit instructs, "to be clearly erroneous, a decision must … strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Ocean Garden, Inc. v. Marktrade Company, Inc.*, 953 F.2d 500, 502 (9th Cir. 1991). This standard does not yield the result Plaintiff seeks.

If the record reasonably "support[s] either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1099 (N.D. Cal. 2019). The Court finds the ALJ's RFC was supported by substantial evidence. As such, the Court affirms the Commissioner's decision and denies Plaintiff's Motion for Reversal and

---

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at (c)(2).

1   Remand on the contention that the ALJ's RFC determination was not supported by substantial

2   evidence.

3       2.    The ALJ's Determination Regarding Plaintiff's Testimony was Supported by Clear
             and Convincing Evidence.

4

5           An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding

6   subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective

7   medical evidence of an underlying impairment which could reasonably be expected to produce the

8   pain or other symptoms alleged."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal

9   quotation marks omitted).  "The … [Plaintiff] is not required to show that her impairment could

10  reasonably be expected to cause the severity of the symptom she has alleged; she need only show

11  that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d

12  586, 591 (9th Cir. 2009) (citations and internal quote marks omitted).  Second, "[i]f the [plaintiff]

13  meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's]

14  testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for

15  the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citation and

16  quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony

17  is not credible and what evidence undermines the [plaintiff's] complaints."  *Id.* (quoting *Lester v.

18  Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

19  ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the

20  court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")).  Further,

21  "[w]hile an ALJ may find testimony not credible in part or in whole, he may not disregard it solely

22  because it is not substantiated affirmatively by objective medical evidence."  *Robbins v. Soc. Sec.*

23  *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

24          The Ninth Circuit recognizes the clear and convincing evidence standard as "the most

25  demanding required in Social Security cases" and "not an easy requirement to meet."  *Garrison v.*

26  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d

27  920, 924 (9th Cir. 2002)); *Trevizo v. Berryhill*, 871 F.3d 664 678 (9th Cir. 2017).  An ALJ's failure

28  to provide "specific, clear, and convincing reasons" for rejecting a plaintiff's pain and symptom

17

testimony constitutes legal error that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

The ALJ provided a thorough summary of Plaintiff's testimony. AR 190. After summarizing the medical record (and a thorough discussion of the same), the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in" her decision. *Id.* The ALJ then identified the timeline of Plaintiff's onset of symptoms following her July 2017 car crash through the end of 2020, a year in which there are no documented hospital visits or treatment records. *Id.* at 190-192. Finally, the ALJ cited Plaintiff's documented ADLs and findings of the State Agency medical consultants as support for discounting Plaintiff's subjective testimony. *Id.* at 192-193. The ALJ stated:

> The claimant's activities of daily living undermine her allegations of disabling symptoms. She reported taking care of her son including picking him up from school, taking him to doctor appointments and feeding him (Ex. 4E/2). She also reported taking care of a pet and walking her animals (Exs. 4E/4; 16F/4; 33F/8). The claimant was not on any medication for her fibromyalgia (Ex. 33F/12-13). Further, she reported she was able to prepare kosher one-pot meals, performing household chores including laundry, washing dishes, cleaning, and cooking, go shopping, and go to synagogue every Saturday (Ex. 4E).
>
> The State agency medical consultant at the initial level opined that the claimant could perform sedentary work with occasional postural limitations but never climbing ladders, ropes, or scaffolds or crawling; occasionally lifting overhead bilaterally; occasional feeling bilaterally; and avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (Exs. 1A; 2A). The State agency medical consultant at the reconsideration level opined the claimant could perform sedentary work with frequent postural limitations but never climbing ladders, ropes, or scaffolds, unlimited balancing, and occasional crawling; occasionally lifting overhead bilaterally; and avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (Exs. 5A; 8A) … Diagnostic imaging of the cervical spine showed instrumentation in place and spinal alignment well maintained C5-C7, no evidence of loosening, migration, or failure (Ex. 5F/158). Medical imaging of the lumbar spine showed L3-L4 and L4-L5 left extraforaminal/left anterolateral disc bulges, facet arthrosis and ligamentum flavum redundancy, but no significant neuroforaminal narrowing or spinal canal stenosis (Ex. 17F/51). A lower extremity nerve conduction study in October 2018 was suggestive of a mild S1 axonal motor radiculopathy versus less likely a sciatic motor mononeuropathy and there was no clear evidence of a significant polyneuropathy (Ex. 5F/68).

1    *Id.*  The above demonstrates the evidence on which the ALJ relied was objective medical evidence

2    and constitutes specific, clear, and convincing reasons to reject the intensity, persistence and limiting

3    effect of Plaintiff's symptoms.   The ALJ did not fail to adequately explain her rationale for

4    discounting Plaintiff's testimony.

5          Moreover, the ALJ did not wholly discount Plaintiff's testimony regarding the intensity,

6    persistence or limiting effects of her symptoms.   The ALJ modified the RFC taking into account

7    Plaintiff's "degenerative disc disease of the cervical and lumbar spine, status-post cervical surgery

8    in December 2017, and fibromyalgia" and limited Plaintiff sedentary work with several

9    environmental restrictions. AR 186, 189.  The record demonstrates the ALJ provided specific, clear,

10   and convincing reasons for rejecting the intensity, persistence, and limiting effects of Plaintiff's

11   symptoms.  As such, the Court upholds the Commissioner's decision and denies Plaintiff's Motion

12   for Reversal and Remand.

13   **IV.   ORDER**

14         IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 18)

15   is DENIED.

16         IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 20) is

17   GRANTED.

18         IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of

19   Defendant and close this case.

20         DATED this 7th day of April, 2023.

21

22   _____
     ELAYNA J. YOUCHAH
23   UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28